UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

CHRISTOPHER WILLIAMS,

    Plaintiff,

v.

CORRECTIONAL
OFFICER SIMPSON, *et al.*,

    Defendants.

Civil Action No. 6:26-CV-00166-CHB

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Christopher Williams filed a civil rights complaint with this Court pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1]. Williams also filed a motion for leave to proceed *in forma pauperis*, [R. 2], which this Court granted via separate Order, [R. 5]. Thus, Williams's complaint is now before the Court on initial screening pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2). For the reasons set forth below, the Court will dismiss Williams's various claims.

I.

Williams alleges in his complaint that, in August of 2024, he "was involved in a physical altercation with another inmate" while he was incarcerated at the United States Penitentiary – McCreary in Pine Knot, Kentucky. [R. 1, pp. 2–5]. Williams alleges that, during the altercation, he "received several forceful blows from [Correctional] Officer Simpson with his baton to my face and head which resulted in fractures to jaw and face (to this day has not healed)." *Id.* at 2. Williams then alleges that he was "taken to medical by administrative officials," where he saw Nurse Privett, who indicated that she was going to "start the I.V." *Id.* Williams, however, says that he "vomit[ed]

blood and a black substance and felt extremely nauseated and lightheaded." *Id.* at 2–3. Williams says that he "was then transferred to Baptist Health Corbin, due to the injuries of head and face." *Id.* at 3.

Williams further alleges that, while he was at Baptist Health Corbin, Nurse Hicks informed him that he was due for one shot and that she would also administer a second shot for pain relief. *Id.* Williams says that Nurse Hicks did, indeed, administer two shots "using the same I.V.s." *Id.* Williams, however, alleges that he did not feel well and subsequently "vomit[ed] blood and some black substance." *Id.* Williams then alleges that he saw Nurse Gray and "asked her [for] something for the pain." *Id.* Williams says that Nurse Gray "came back with a needle and administered another shot, this time directly into [his] left arm (shoulder)." *Id.* at 3–4. Williams, however, alleges that he once again vomited a "black substance and blood." *Id.* at 4. Williams later indicates that some imaging was completed—i.e., an x-ray and/or an MRI—and a doctor informed him that he had a fracture to his face and jaw, as well as a possible concussion. *Id.*

Williams names the following Defendants in his complaint: (1) Correctional Officer Simpson; (2) the United States of America; (3) Nurse Privett; (4) Nurse Hicks; (5) Nurse Gray; and (6) Baptist Health Corbin. [R. 1, pp. 1–2]. Williams claims that Defendants violated his rights under the First, Fifth, and Eighth Amendments to the United States Constitution. *Id.* at 5. For relief, Williams is seeking an "undisclosed amount of monetary payment," as well as "release from federal custody" and "prosecution of Defendants." *Id.* at 9.

II.

*A. Claims Against the United States of America*

Having reviewed Williams's pleading, the Court will first dismiss his claims against the United States of America. *See* 28 U.S.C. § 1915A(b)(2); § 1915(e)(2)(B)(iii). That is because

2

*Bivens* claims against the United States are barred by sovereign immunity. *Franklin v. Henderson*, No. 00-4611, 2001 WL 861697, at *1 (6th Cir. June 20, 2001). Thus, as the United States Court of Appeals for the Sixth Circuit has plainly stated, "Plaintiffs cannot bring *Bivens* suits against the United States." *Borkins v. United States*, No. 98-1668, 1999 WL 777538, at *1 (6th Cir. Sept. 16, 1999) (citations omitted).

### B.   Claims Against Nurses Privett, Hicks, and Gray, as well as Baptist Health Corbin

Next, the Court will dismiss Williams's claims against Nurses Privett, Hicks, and Gray, as well as his claims against Baptist Health Corbin. With respect to Williams's claims against the nurses, his allegations certainly do not state a First or Fifth Amendment claim against any of these Defendants. In fact, as best as the Court can tell, Williams is only claiming that the nurses displayed a deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment. But Williams has failed to state such a claim upon which relief may be granted against the nurses.

It is true that, under certain circumstances, a prisoner can establish an Eighth Amendment violation if he is provided with inadequate medical care. However, the prisoner must satisfy two components—one objective and one subjective. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To satisfy the objective component, the prisoner must allege a sufficiently serious medical need. *Id.* To satisfy the subjective component, the prisoner must allege facts which "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, even if the Court assumes that Williams had a sufficiently serious medical need, he has not alleged that any of the nurses acted with the mens rea required to satisfy

3

the subjective prong of a deliberate indifference claim. On the contrary, Williams admits that each of the nurses interacted with him and provided him with medical care, such as by starting an I.V. and administering medications. [R. 1, pp. 2–3]. While Williams may be objecting to the medications he received, he does not clearly allege that any of the nurses had the kind of culpable mental state required to state an Eighth Amendment deliberate indifference claim. Thus, the Court will dismiss those claims. *See* § 1915A(b)(1); § 1915(e)(2)(B)(ii).

Williams's claims against Baptist Health Corbin are also unavailing. At bottom, Williams has not put forth any substantive factual allegations—let alone identified any legal authority— that would allow him to proceed with constitutional claims against this entity. Thus, the Court will dismiss those claims too. *See* § 1915A(b)(1); § 1915(e)(2)(B)(ii).

### C. Claim Against Correctional Officer Simpson

That leaves Williams's allegations against Correctional Officer Simpson. As best as the Court can tell, Williams is claiming that Simpson improperly used excessive force against him in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. The Court, however, will dismiss this claim because it presents a new context for a *Bivens* action, and there are special factors advising against expanding the *Bivens* remedy to this context.

Claims seeking monetary relief against an individual federal official may be pursued, if at all, pursuant to the doctrine of *Bivens*. *Bivens* held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens*, 403 U.S. at 397. However, the *Bivens* remedy is judicially created and may be implied only in limited circumstances. *Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017). Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in the following three circumstances: (1) where federal officials searched a private residence without

probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980).  *See Ziglar*, 582 U.S. at 130–31.

Since *Carlson* was decided, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*."  *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020); *see also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants"). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them."  *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (stating that since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb").  The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Ziglar*, 582 U.S. at 135; *see also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

Under *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials.  First, the Court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*.  *Hernandez*, 589 U.S. at 102 (citations omitted).  Whether the claim is presented in a "new context" is to be interpreted broadly, as a context will be regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]"  *Id.*  (quoting *Ziglar*, 582 U.S. at 139).  A difference is "meaningful" if, for example, it involves a different constitutional

right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion.  *Ziglar*, 582 U.S. at 139–40.

If a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Id.* at 136 (quoting *Carlson*, 446 U.S. at 18).  This inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id*.  Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never."  *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied*, No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022).  "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?  If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie."  *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *see also Ziglar*, 582 U.S. at 135–36 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." (cleaned up)).

Williams's Eighth Amendment claim based on allegations that a prison employee used excessive force against him presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*.  While, like the claim implied in *Carlson*, Williams's claim sounds in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez*, 589 U.S. at 103.  Plainly, a prisoner's

claim that excessive force was used against him by prison staff is a different context than the claim in *Carlson* of deliberate indifference to a prisoner's medical needs. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar*, 582 U.S. at 147, the Court concludes that the first part of the *Ziglar* test has been met here.

The Court, therefore, proceeds to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context. *Ziglar*, 582 U.S. at 136. Because "separation of powers should be a guiding light . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 635 (2021)).

There are multiple reasons that a judicially implied remedy for damages is not appropriate in this case. First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. Congress, however, failed to do so with respect to federal actors. To the contrary, more recently, Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 582 U.S. at 148–49 (citations omitted).

Second, there are several alternative means for prisoners to vindicate constitutional rights. For federal inmates, the Federal Bureau of Prisons' inmate grievance program provides a ready and viable mechanism to challenge alleged misconduct by staff. *See Malesko*, 534 U.S. at 61. This remedy is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 596 U.S. at 498 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." (emphasis added)); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress." (citation omitted)). Nor is the grievance program considered a less effective remedy because it does not provide the deterrence afforded by damages. *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021).

In addition to the foregoing remedy, Williams could have pursued a claim for monetary relief against the United States pursuant to the Federal Tort Claims Act, which is a limited waiver of the federal government's sovereign immunity permitting an action against the United States for negligent or intentional acts committed by its employees during their employment. *See* 28 U.S.C. § 1346(b)(1). Likewise, the threat of an investigation through the Federal Bureau of Prisons' Internal Affairs Office or the Department of Justice's Office of the Inspector General may also

8

serve to deter misconduct. *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Williams's claim is significant, since "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,'—counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id.* (quoting *Turner*, 482 U.S. at 85).

The Supreme Court has instructed that, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102). Thus, because multiple factors counsel against implying a *Bivens* remedy for Williams's Eighth Amendment claim alleging that excessive force was used against him, the Court will not do so here. This conclusion is consistent with recent Sixth Circuit case law. *See Greene*, 2022 WL 13638916, at *4 (stating that "special factors counsel against recognizing a new *Bivens* claim in this [Eighth Amendment excessive force] context, namely, that Congress has not created a cause of action for damages against federal corrections

9

officers and officials, [the plaintiff] has an adequate alternative remedy under the [Bureau of Prisons'] grievance system, and implying a cause of action in this context would risk interfering with prison administration" (citations omitted)).

In short, *Bivens* does not provide a monetary remedy for Williams's Eighth Amendment claim based on his allegations that excessive force was used against him. Thus, Williams's Eighth Amendment excessive force claim against Correctional Officer Simpson will be dismissed.

### D.  Other Requests for Relief

Finally, the Court recognizes that, at the end of Williams's complaint, he requests "release from federal custody" and "prosecution of Defendants." [R. 1, p. 9]. But a federal prisoner may not generally use a *Bivens* action to seek relief from custody. *See Stephens v. Kizziah*, No. CV 7:17-40-KKC, 2018 WL 988078, at *1 (E.D. Ky. Feb. 20, 2018) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). And the criminal prosecution of an individual is a process that is generally initiated by prosecutors, not private citizens or this Court. *See Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001); *Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308–09 (6th Cir. 2004). Thus, Williams's remaining requests for relief are baseless.

### III.

In light of the foregoing analysis, it is **ORDERED** as follows:

1.  Williams's claims against Defendants, [R. 1], are **DISMISSED** with prejudice.

2.  This action is **STRICKEN** from the Court's docket.

3.  The Court will enter a corresponding Judgment.

This the 15th day of July, 2026.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY